IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01676-MEH

WISE SERVICES, INC.,

    Plaintiff,

v.

ATLAS COPCO DRILLING SOLUTIONS LLC,
MINING, ROCK EXCAVATION AND CONSTRUCTION LLC,
SUN MACHINERY CORP.,
DALLAS-MORRIS DRILLING, INC., and
CHRISTOPHER MURRAY,

    Defendants.

---

# ORDER ON MOTION FOR ATTORNEY'S FEES
---

**Michael E. Hegarty, United States Magistrate Judge**.

On December 28, 2017, the Court granted Defendant Atlas Copco Drilling Solutions LLC's ("Atlas") motion to dismiss the three claims Plaintiff Wise Services, Inc. ("Plaintiff") brought against Atlas in the operative Amended Complaint. Order, ECF No. 57. Here, citing a state statute, Atlas seeks an award of attorney's fees incurred in filing the motion to dismiss. The Court agrees that Atlas is entitled to a fee award, but finds its fee request is unreasonable in certain respects. Thus, the Court will grant in part and deny in part Atlas' motion for attorney's fees.

**I.**     **Background**

Plaintiff brings nine claims for relief against the various Defendants but asserted only three of those claims against Atlas—Claim 1 for product liability, Claim 3 for breach of implied warranty of fitness for a particular purpose, and Claim 4 for negligence—based on the following allegations:

    Atlas was the manufacturer of the Predator Drilling System (the "Predator

Drill Rig" or the "Rig") at issue in this lawsuit. Am. Compl. ¶¶ 11, 18, ECF No. 6. The Predator Drill Rig was a prototype, but Atlas did not label or otherwise mark it as such. *Id.* ¶¶ 14, 19. Defendant Dallas-Morris Drilling, Inc. ("Dallas-Morris") was the original purchaser or lessor of the Rig. *Id.* ¶ 20. In 2015, Plaintiff entered into a contract to purchase the Rig from Dallas-Morris for a price of $1.7 million. *Id.* ¶¶ 11, 33. When it purchased the Rig, Plaintiff had no knowledge that it was a prototype. *Id.* ¶¶ 34–37.

Plaintiff began having problems with the Rig almost immediately. It first used the Rig to fulfill a contract to drill four surface holes. *Id.* ¶ 40. While drilling the first hole, the Rig failed and required replacement parts. *Id.* ¶¶ 41–44. After those repairs, the Rig's computer control system failed while drilling the second hole. *Id.* ¶ 46. Plaintiff was unable to use the Rig to complete the four-hole contract and subcontracted the remaining job to a third party. *Id.* ¶ 48.

Plaintiff repaired the Rig at its expense and entered into a new drilling contract with a new third party. *Id.* ¶¶ 55–56. However, immediately after the Rig began to drill, its computer system failed again. *Id.* ¶ 57. After chronic failures of both the Rig's mechanical and computer systems, the third party terminated the contract. *Id.* ¶ 59. During subsequent contracts, the same problems persisted, and Plaintiff continued to incur significant expenses repairing the Rig. *Id.* ¶¶ 60–65, 67.

Order, ECF No. 57. During the briefing on the motion to dismiss, Plaintiff voluntarily withdrew its first claim, conceding it was subsumed by the breach of implied warranty claim. The Court then determined that Plaintiff failed to state plausible third and fourth claims against Atlas pursuant to Fed. R. Civ. P. 12(b)(6). *Id.*

Atlas timely filed the present motion seeking an award of attorney's fees pursuant to Colo. Rev. Stat. § 13-17-201. Atlas argues that Plaintiff's claims were primarily tort-based and, thus, the applicable statute mandates a fee award. Mot. 2–3. Plaintiff counters that the essence of its action actually sounds in contract and, thus, § 13-17-201 does not apply; alternatively, Plaintiff contends Atlas' fee request is not reasonable. Atlas' reply opposes both points.

II.     **Legal Standards**

When exercising jurisdiction over diversity cases, such as this, federal courts apply the substantive law of the forum state. *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000). "In the Tenth Circuit, attorney fee statutes are considered substantive." *Id.* (citing *Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999)). The Court finds, and Plaintiff does not object, that it is proper to look to Colorado law, including Colorado's fee recovery provision § 13–17–201, for potential application in this case. *See Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 715 (10th Cir. 2009) (unpublished). Section 13–17–201 states,

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action . . . .

"The attorney fee-shifting statute is intended to apply only to 'a narrow category of baseless tort cases, namely those cases that were so lacking in substance that they could not survive a motion to dismiss for failure to state a claim upon which relief could be granted.'" *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1165 (Colo. 2013) (quoting *Krystkowiak v. W.O. Brisben Cos.*, 90 P.3d 859, 869 (Colo. 2004)). The provision requires that the trial court award reasonable attorney's fees to a defendant when two conditions are met: (1) the action lies in tort; and (2) the action is dismissed pursuant to Rule 12(b). *Infant Swimming Research, Inc.*, 335 F. App'x at 715; *see also Gagne v. Gagne*, 338 P.3d 1152, 1166 (Colo. App. 2014). The statute "applies not only to tort actions involving death or injury to person or property, but also to tort actions involving mere economic injury." *Nero v. Am. Family Mut. Ins. Co.*, No. 11-cv-02717-PAB, 2013 WL 5323191, at *7 (D. Colo. 2013) (quoting *Houdek v. Mobil Oil Corp.*, 879 P.2d 417, 424 (Colo. App. 1994)).

"Although the statute speaks of dismissals pursuant to Rule 12 of the Colorado Rules of Civil Procedure, the statute nevertheless applies to dismissals under Fed. R. Civ. P. 12(b)(6) as well. Similarly, although the statute speaks of an 'action' being dismissed, the 10th Circuit has interpreted that language to permit an award of fees in circumstances where all claims against a single defendant are dismissed on Rule 12 grounds, even though claims continue against other defendants." *Torres v. Am. Family Mut. Ins. Co.*, 606 F. Supp. 2d 1286, 1287 (D. Colo. 2009) (citing *Jones*, 203 F.3d at 757, n.6). In other words, "a defendant must prevail on the entire action as to that defendant under Rule 12(b)[.]" *Jones v. Haga*, No. 05-cv-02268-PSF, 2007 WL 433126, at *2 (D. Colo. 2007).

### III. Analysis

Plaintiff challenges the present motion arguing first that the statute does not apply and, second, that the fees requested are unreasonable. The Court will address each challenge in turn.

    A.    <u>Is Atlas Entitled to a Fee Award Under § 13-17-201?</u>

The only challenge Plaintiff makes to the application of § 13-17-201 in this case is to argue his claims were primarily contractual in nature. To determine whether a "tort action" has been pled for the purposes of § 13–17–201, "district courts focus on the manner in which the plaintiff's claims are pled." *Nero*, 2013 WL 5323191 at *7 (citing *Dubray v. Intertribal Bison Co-op.*, 192 P.3d 604, 607 (Colo. App. 2008)). Courts examine the face of the pleading, rather than the underlying logic of the claims. *Torres*, 606 F. Supp. 2d at 1291. "It makes the plaintiff the master of his pleading: if the plaintiff chooses to plead claims in tort, he runs the risk of C.R.S. § 13–17–201 applying; if he wishes to avoid the application of the statute, he must refrain from pleading tort claims." *Id.* Thus, "[w]hen a party has pleaded both tort and non-tort claims, a court must determine, as a matter of law, whether the essence of that party's action was one in tort, in order to ascertain if section

4

13–17–201 applies." *Gagne*, 338 P.3d at 1167. In so determining, "the court should focus on the manner in which the claims were pleaded" . . ., "should rely on the pleading party's characterization of its claims[,] and should not consider what the party should or might have pleaded." *Id.*

No party here disputes that Plaintiff's Claim Three for breach of implied warranty is grounded in contract and that Claim Four for negligence is a tort claim; however, citing the Colorado Court of Appeals, Plaintiff asserts that the "essence" of its claims against Atlas are based on contract and that Atlas conceded as much in its Motion to Dismiss. Resp. 2–3. Atlas counters not only that Plaintiff originally pleaded two tort claims against Atlas,[1] but also that Plaintiff's claims all allege a "duty," which is predominantly a tort theory.

In *Checkley v. Allied Prop. & Cas. Ins. Co.*, 635 F. App'x 553, 559 (10th Cir. 2016), the Tenth Circuit adopted the "predominance test" from *Gagne* to determine whether an action sounds in tort or in contract for application of § 13-17-201:

> [T]he most logical sequence to undertake this hybrid analysis is to first apply the "predominance" test, assessing whether the "essence of the action" is tortious in nature (whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims) or not. The Court would then turn to the question of whether tort claims were asserted to unlock additional remedies only where the predominance test failed to yield a clear answer, such as when the tort- and non-tort claims are equal in number or significance....

*Gagne*, 338 P.3d at 1168 (citation omitted). In *Gagne*, the court found that the defendant alleged the same number of tort and contract counterclaims and, thus, proceeded to determine that, because the

---

[1]The Court agrees with Plaintiff that its voluntarily dismissed products liability claim should not be considered in this analysis. *See Emp'rs Ins. of Wausau v. RREEF USA Fund-II (Colo.), Inc.*, 805 P.2d 1186, 1188 (Colo. App. 1991) (section 13-17-201 "does not apply to all pretrial dismissals, and by implication it allows a plaintiff to avoid liability for a defendant's attorney fees by the simple expedient of seeking a voluntary dismissal[.]").

5

tort counterclaims did *not* seek relief beyond that sought in the contract counterclaims, fees should not be awarded under § 13-17-201. *Id.* In *Checkley*, the Tenth Circuit found that, while the plaintiff alleged a contract claim and two tort claims, the "substantial predicate" of the claims was the breach of contract claim and, therefore, fees were properly denied. 635 F. App'x at 560.

In this case, based on the factual allegations set forth above, Plaintiff alleged the following claims against Atlas (to which Plaintiff refers as "Manufacturer" in its pleading):

### THIRD CLAIM FOR RELIEF
(Breach of Implied Warranty of Fitness for Particular Purpose – Atlas Copco Drilling Solutions LLC, Sun Machinery Corp., and Christopher Murray)

87. Paragraphs 1–86 are incorporated herein by reference.

88. Manufacturer, Sun, by and through Mr. Murray, and Dallas-Morris sold the Predator Drill Rig.

89. Manufacturer, Sun, by and through Mr. Murray, and Dallas-Morris impliedly warranted that the Predator Drill Rig was suitable for the particular purpose of drilling surface holes for oil and gas exploration and production companies.

90. Wise was reasonably expected to use the Predator Drill Rig.

91. The Predator Drill Rig was not fit for the particular purpose for which it was warranted.

92. This breach of warranty has caused Wise significant economic and non-economic losses, including but not limited to maintenance and repair costs, out-of-pocket expenses, lost profits, lost drilling contracts, and damage to Wise's professional reputation.

93. Wise is entitled to a recovery of all actual, direct, consequential, special, and compensatory damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
(Negligence – Atlas Copco Drilling Solutions LLC)

94. Paragraphs 1–93 are incorporated herein by reference.

95. Manufacturer manufactured the Predator Drill Rig.

96. Manufacturer had the duty to label or otherwise mark the Predator Drill Rig as a prototype.

97. Manufacturer did not label or otherwise mark the Predator Drill Rig as a prototype.

98. Manufacturer, as seller of the Predator Drill Rig to Dallas-Morris, had the duty to control any subsequent resale of the Predator Drill Rig.

99. Either the contract for lease or sale between the Manufacturer and Dallas-Morris contained no provision restricting or controlling the resale of the Predator Drill Rig, or the Manufacturer failed to enforce any such provision.

100. Manufacturer's breach of its duty to mark the Predator Drill Rig and/or to control the subsequent disposition of the Predator Drill Rig caused Wise significant economic and noneconomic losses, including but not limited to maintenance and repair costs, out-of-pocket expenses, lost profits, lost drilling contracts, and damage to Wise's professional reputation.

101. Wise is entitled to a recovery of all actual, direct, consequential, special, and compensatory damages in an amount to be proven at trial.

Am. Compl., ECF No. 6.

With respect to the third claim, "[a]n implied warranty of fitness for a particular purpose arises '[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.'" *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 208 (Colo. 1984) (second alteration in original) (quoting Colo. Rev. Stat. § 4-2-315).

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.

§ 4-2-315 cmt. 2. The Court dismissed this claim because Plaintiff failed to allege in the Amended Complaint a particular purpose for which it was purchasing the Rig (i.e., oil and gas drilling) that

7

was different from the ordinary purpose for which the Rig was manufactured (i.e., a prototype for testing and developing equipment before entering full production). *See* Order, ECF No. 57.

Regarding the fourth claim for negligence, Plaintiff was required to plausibly allege (1) the defendant owed the plaintiff a legal duty of care; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach caused that injury. *Vigil v. Franklin*, 103 P.3d 322, 325 (Colo. 2004). "Of these, duty is the threshold element. Only if there is a legal duty to avoid unreasonably risky conduct does the issue of breach and then the other negligence elements arise." *Id.* "A negligence claim must fail if based on circumstances for which the law imposes no duty of care upon the defendant for the benefit of the plaintiff." *Univ. of Denver v. Whitlock*, 744 P.2d 54, 56 (Colo. 1987).

The Court recognized in this case that Plaintiff alleged Atlas failed to prevent harm when selling the Rig. Order, ECF No. 57. In cases of nonfeasance, the Colorado Supreme Court has stated that "any duty that the defendant owed to the plaintiff would need to be grounded on a special relationship between the [parties]." *N.M. ex rel. Lopez v. Trujillo*, 397 P.3d 370, 374 (Colo. 2017). "Such relationships are predicated on a 'definite relation' between the parties that is of such a character that social policy justifies the imposition of a duty to act." *Id.* Because Plaintiff failed to allege a "special relationship" with Atlas on which its negligence claim could be based, the Court dismissed the claim.

Here, applying the "predominance test" on which Plaintiff relies, the Court finds an award of attorney's fees pursuant to § 13-17-201 is proper in this case. First, in assessing whether the "essence of the action" is tortious in nature—whether quantitatively by simple number of claims or based on a more qualitative view of the relative importance of the claims—the Court concludes that

8

both quantitatively and qualitatively, the claims are the same; neither claim constitutes a "substantial predicate" of the action against Atlas. *See Checkley*, 635 F. App'x at 560. Proceeding then to the second question, the Court finds that, on its face, the two claims appear to seek the *same* relief. Am. Compl. ¶¶ 92, 100. However, under its Prayer for Relief, Plaintiff seeks an award of "exemplary and punitive damages against all Defendants, jointly and severally, in an amount to be determined at trial." *Id.* at 20. The Court must conclude then that Plaintiff asserted tort claims against Atlas "to unlock additional remedies" and, therefore, the action is primarily tortious in nature. *See Gagne*, 338 P.3d at 1168.

B.  Are the Requested Fees Reasonable?

To determine a reasonable fee request, the Court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The Tenth Circuit Court of Appeals has recognized the lodestar amount as presumptively reasonable. *See Robinson*, 160 F.3d at 1281; *see also Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

Plaintiff contends that Atlas' fee request is unreasonable because (1) Atlas "provides no discussion of the relevant qualifications and experience of Attorneys Plachy or Kallman," (2) "the redacted billing statements attached to the Affidavit of Mr. Plachy appear to sum up to only 23.9 hours of work performed by Ms. Kallman," and (3) "Atlas's billing statements appear to include

9

work performed for other clients and not related to Atlas's Motion to Dismiss." Resp. 4–5.

First, the Court disagrees that the affidavit contains insufficient information concerning relevant qualifications and experience of the attorneys representing Atlas. Michael D. Plachy described his qualifications as being "a partner at Lewis Roca Rothgerber Christie LLP" and "licensed as an attorney in Colorado and Pennsylvania," and his experience as "practicing law for 25 years." Affidavit of Michael D. Plachy, January 25, 2018 ("Plachy Aff.") ¶ 3. He described Hermine Kallman's qualifications as "an associate at Lewis Roca Rothgerber Christie LLP" and "licensed in [the] State of Colorado," and her experience as "practicing law for over five years." *Id.* ¶ 4. The Court finds this information sufficient to determine, based on my own experience as a judge and practicing lawyer, that the hourly rates of $400 for Mr. Plachy and $280 for Ms. Kallman to be reasonable in the prevailing market. *See Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002) (a court may adjust the rates suggested by counsel based on its own familiarity with the range of prevailing rates in the Denver, Colorado market).

However, the Court finds that the total number of hours reportedly worked (33.4) on a seven-page motion and eleven-page reply brief to be somewhat excessive and suspects that some hours might, in fact, have been billed for work performed for other clients. While "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[,] . . . . [t]he district court has a corresponding obligation to exclude hours not 'reasonably expended' from the [lodestar] calculation." *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).

Certain of the invoice copies attached to the motion are difficult to discern. The first invoice is dated September 18, 2017 and appears to be addressed to Atlas. ECF No. 61-1 at 4–5. The hours

expended by Ms. Kallman appear to be reasonable; however, the Court finds the hour spent by Mr. Plachy to "review and analyze" the 20-page Complaint filed against Atlas to be excessive. The Court will award .5 hours for Mr. Plachy for a total of 2.7 hours from the September 18, 2017 invoice.

The next invoice is dated October 31, 2017 and does not indicate to which client it is addressed, but will assume it was properly addressed to Atlas. ECF No. 61-1 at 6–7. The Court finds the work expended by Mr. Plachy on September 8, 2017 and September 27, 2017 and by both attorneys on September 26, 2017 to be reasonable; however, Ms. Kallman reports on September 26, 2017 that she expended 6.5 hours not only "[f]inish[ing] drafting motion to dismiss all claims against Atlas," but also "draft[ing] motion to dismiss individual defendants." The Court will award three hours for Ms. Kallman's work on September 26 and award a total of 8.7 hours from the October 31, 2017 invoice.

The third invoice is dated November 8, 2017 and does not reflect to which client it is addressed. ECF No. 61-1 at 8. Assuming again that the invoice is addressed only to Atlas, the Court finds that the work performed by both attorneys on October 2, 2017 was not solely for Atlas, as they both report "[f]inaliz[ing] *motions* to dismiss." *Id.* (emphasis added). To the extent this report refers to two motions filed by these attorneys on October 2, 2017 (ECF Nos. 32, 33), the Court will reduce the hours by half and award .35 hours for Mr. Plachy and .75 hours for Ms. Kallman for a total of 1.1 hours from the November 8, 2017 invoice.

Finally, the fourth invoice is dated December 9, 2017 and is addressed to Atlas. The Court finds the work reported by Mr. Plachy on November 7, 2017 to be duplicative of Ms. Kallman's work on November 10, 2017, and the work reported on November 14, 2017 to be inapplicable to this

case (there is no "MSJ" or motion for summary judgment at issue here). Otherwise, the Court finds all other hours expended to be reasonable and will award 2.6 hours for Mr. Plachy and 13.7 hours for Ms. Kallman for a total of 16.3 hours from the December 9, 2017 invoice.

Therefore, the Court finds reasonable a total of 5.35 hours expended by Michael D. Plachy and 23.45 hours expended by Hermine Kallman.

## IV. Conclusion

In sum, the Court finds it proper to award Atlas its reasonable attorney's fees pursuant to Colo. Rev. Stat. § 13-17-201 as follows:

| Michael D. Plachy | $400 | X | 5.35 hours | = | $ 2,140.00 |
| Hermine Kallman | $280 | X | 23.45 hours | = | $ 6,566.00 |

Therefore, Atlas' Motion for Attorney's Fees under C.R.S. § 13-17-201 [filed January 25, 2018; ECF No. 61] is **granted in part and denied in part**. On or before May 16, 2018, the Plaintiff shall pay to Atlas a total of $8,706.00 as an award for Atlas's successful motion to dismiss the Plaintiff's claims under § 13-17-201. Plaintiff shall file a Notice of Compliance with Order on Motion for Attorney's Fees **on or before May 18, 2018**.

Entered and dated this 17th day of April, 2018, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge